[No. B110711. Second Dist., Div. Two. Oct. 29, 1998.]

JAMES W. QUAN et al., Plaintiffs and Appellants, v.
TRUCK INSURANCE EXCHANGE, Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III, sections H. through K.

584

## COUNSEL

Jacob N. Segura for Plaintiffs and Appellants.

Cooper, Kardaras & Scharf, Edward C. Wilde, Greines, Martin, Stein & Richland, Irving H. Greines and Marc J. Poster for Defendant and Respondent.

## OPINION

**ZEBROWSKI, J.**—The trial court in this case sustained, without leave to amend, a demurrer by defendant and respondent Truck Insurance Exchange (insurer) to a second amended complaint (SAC) for declaratory relief, breach of insurance contract, and breach of the implied covenant of good faith and

fair dealing[1] brought by plaintiffs and appellants James W. Quan and Lucita L. Quan (insureds.)[2]

Because the SAC reveals no potential that the insurer could be liable to indemnify its insureds for any of the claims presented in the underlying action, we affirm. In the published portion of this opinion, we explain that the underlying action did not raise any potential for coverage under the insurance policy's "bodily injury" coverage. In the unpublished portion, we explain that we need not consider the potential for coverage under the insurance policy's "personal injury" coverage in view of the procedural posture of this case, that (in view of the lack of any potential for either "bodily injury" or "personal injury" coverage) we need not determine the application of the "wilful act" exclusion created by Insurance Code section 533, and that unpled claims against Lucita Quan do not create a potential for coverage.

## I.  Procedural Background

### A.  *The Underlying Action*

In 1989, Darlene Bradford (claimant) filed a civil action (the underlying action or underlying complaint) against insured James Quan.[3] The underlying complaint by the claimant asserts four brief causes of action, for "assault and battery," "intentional infliction of emotional distress," "negligence," and "negligent infliction of emotion [*sic*] distress."

The underlying complaint was not served on the insured until March of 1992, when the insured promptly tendered his defense to the insurer. That same month, the insurer assigned the defense of the insured to defense counsel chosen by the insurer, under a "reservation of rights" pending results of the insurer's coverage investigation.[4]

---

[1]The SAC also contained causes of action against the insurer for fraud, negligent misrepresentation and "negligence." The insureds have not briefed any arguments asserting the viability of these latter three claims, despite the insurer's assertion in its respondent's brief that the failure to address the claims constituted a waiver of those issues on appeal. The insureds have waived any challenge to the trial court's dismissal of those three causes of action.

[2]Use of the term "insureds" refers to both plaintiffs, James and Lucita Quan. Unless the context indicates otherwise, use of the singular "insured" refers to plaintiff James W. Quan.

[3]Although she is a named plaintiff and is named as an "insured" in the policy at issue, the record does not reveal that Lucita Quan, the spouse of James Quan, has ever been named as a defendant in the underlying action.

[4]The insurer's letter sent in response to the defense tender was attached to the insureds' complaint. The letter states: "By undertaking such an investigation, the Truck Insurance

The insurer defended the action through its selected defense counsel for a period of nine months while it assertedly conducted a coverage investigation. On December 18, 1992, the insurer withdrew from the defense and denied any indemnity obligation.[5]

Although the record does not indicate the manner in which the underlying action was sent to judicial arbitration, the SAC in this action includes as an exhibit a July 1993 letter from the insureds' subsequently retained defense counsel enclosing a document entitled "Amended Findings and Award of Arbitrator." Whatever their origin, the findings and award were apparently rendered a nullity by a request for trial de novo, inasmuch as the matter proceeded to two mistrials before the underlying action was finally tried to a judgment in favor of the claimant in May 1995. The insured appealed the underlying judgment, which was reversed by this court on December 3, 1997.[6] The record does not further disclose the immediate status of the underlying case.

## B.  *The Coverage Action*

The allegations of the insureds' second amended complaint span more than 100 pages, with nearly 200 pages of exhibits. Of necessity, the factual allegations may only be summarized. They fall into two broad categories.

First, the insureds allege that·the insurer's refusal to agree to defend and indemnify was not only erroneous, but unreasonable so as to constitute a breach of the implied covenant, in light of: (1) the allegations of the underlying complaint; (2) information the insurer had gathered or learned from other sources by the time it withdrew from the defense after nine months; and (3) information it learned after withdrawing from the defense.

Second, the insureds allege that the insurer not only conducted itself improperly in withdrawing from the defense, but also in the manner in which it investigated the coverage issues, and in the way it defended the insured for

---

Exchange does not waive any of its rights to limit or deny defense or indemnity. We have not made any final determination about whether the issues contained in the lawsuit fall within the scope of your insurance policy with Truck Insurance Exchange."

[5]The denial letter, dated December 7, 1992, was attached as an exhibit to the insureds' first amended complaint. It states, in part: "It is the position of Truck Insurance Exchange that assault and battery as well as intentional infliction of emotional distress do not come within the meaning of 'occurrence' in your policy. [¶] The complaint alleges that 'on or about April 7, 1988 . . . defendant with force and against the consent of plaintiff, assaulted plaintiff and raped, ravaged, and carnally knew her'. [¶] The plaintiff prays for punitive and/or exemplary damages. These damages are not insurable pursuant to Insurance Code Section 533."

[6]The insureds attach the unpublished opinion of this division to their reply brief, which recites the mistrial history.

the nine-month period in which it was conducting a coverage investigation. The insureds allege that from the very nature of the allegations of the underlying complaint, the insurer knew there was a coverage issue of the type that should give rise to a right to independent counsel under Civil Code section 2860, but deprived the insured of that right for nine months while trying to build the case for a coverage denial, and then cast the insured adrift. In the interim, the insured's defense was allegedly compromised, and settlement opportunities within policy limits were either not communicated to the insured, or improperly allowed to lapse.[7]

The insurer demurred to each cause of action on the ground that it failed to state a cause of action. The trial court sustained the demurrers and ordered the action dismissed under Code of Civil Procedure section 581, subdivision (f)(1). The insureds appeal from the order of dismissal. (Code Civ. Proc., § 581d.)

On appeal, the insureds contend only that their complaint "was and is legally sufficient to state causes of action against [insurer] for breach of contract and breach of the implied covenant of good faith and fair dealing arising from [insurer's] unjustified failure and refusal to defend [insureds] against [claimant's] action." Thus, only three of the insureds' causes of action are potentially pertinent: the first cause of action, for "declaratory relief," the second cause of action (erroneously titled as an "implied covenant" claim) which alleges that the insurer's refusal to defend and indemnify is a breach of the insurance contract, and the portion of the third cause of action which alleges that the insurer's refusal to defend and indemnify further constituted a breach of the covenant of good faith and fair dealing.

## II. STANDARD OF REVIEW

The complaint must be liberally construed with a view to substantial justice between the parties. (Code Civ. Proc., § 452.) ■ A demurrer is treated as admitting all material facts properly pleaded, but not " 'contentions, deductions or conclusions of fact or law.' " (*Blank* v. *Kirwan* (1985) 39

---

[7]On appeal, insureds do not contend this conduct independently supports their breach of contract or "bad faith" claims. We deem any such arguments waived (*Mansell* v. *Board of Administration* (1994) 30 Cal.App.4th 539, 545-546 [35 Cal.Rptr.2d 574]), expressing no view on their merits. (Cf. *Waller* v. *Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 36 [44 Cal.Rptr.2d 370, 900 P.2d 619] ["It is clear that if there is no *potential* for coverage and, hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer. [Citation.] . . . Absent that contractual right, however, the implied covenant has nothing upon which to act as a supplement, and 'should not be endowed with an existence independent of its contractual underpinnings.' [Citation.]")

Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]). Under *Blank,* the complaint must be given a reasonable interpretation, reading it as a whole and its parts in their context. When a demurrer is sustained, the court determines whether the complaint states facts sufficient to constitute a cause of action. And when it is sustained without leave to amend, the court decides whether there is a reasonable possibility that the defect can be cured by amendment. If it can be, the trial court has abused its discretion and the reviewing court will reverse; if not, there has been no abuse of discretion. (*Ibid.*) The burden of proving the "reasonable possibility" of cure by amendment is on the plaintiff, but the showing need not be made in the trial court so long as it is made to the reviewing court. (*Careau & Co.* v. *Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1381 [272 Cal.Rptr. 387].)

Here, the insureds make no showing of how the SAC could be amended if it is determined not to state a cause of action. The record reflects three ever-lengthening complaints and sets of exhibits comprising hundreds of pages. There is no indication that every fact allegedly known to the insurer at any time with regard to the underlying action is not either expressly alleged and/or substantiated with exhibits to the SAC. Accordingly, there is no reason to consider whether the trial court abused its discretion in light of the possibility of further amendment.[8] (See *Michaelian* v. *State Comp. Ins. Fund* (1996) 50 Cal.App.4th 1093, 1105, fn. 4 [58 Cal.Rptr.2d 133].)

■ The interpretation of an insurance policy as applied to undisputed facts (here, the facts alleged by the insureds) is a question of law for the court, which is not bound by the trial court's construction. (*Collin* v. *American Empire Ins. Co.* (1994) 21 Cal.App.4th 787, 802 [26 Cal.Rptr.2d 391].)

## III. DISCUSSION

### A. *Nature of the Duty to Defend*

■ The parties agree the dispositive issue is whether the insurer had a duty to defend. The principles governing determination of the existence of that duty are oft-stated: "[A] liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168]

[8]For similar reasons we decline the insureds' request that we take judicial notice of hundreds of additional pages from James Quan's criminal proceedings, the entire civil file in the nine-year-old underlying action, and the remaining matters as to which judicial notice was requested by the insureds.

(*Gray*).) As we said in *Gray*, 'the carrier must defend a suit which *potentially seeks damages within the coverage of the policy.*' (*Id.* at p. 275, italics in original.) Implicit in this rule is the principle that the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded. [Citations.]" (*Horace Mann Ins. Co.* v. *Barbara B.* (1993) 4 Cal.4th 1076, 1081 [17 Cal.Rptr.2d 210, 846 P.2d 792].) "The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint also give rise to a duty to defend when they reveal the possibility that the claim may be covered by the policy. (*Gray, supra*, 65 Cal.2d at p. 276.)" (*Ibid.*)

Thus the Supreme Court in *Montrose Chemical Corp.* v. *Superior Court* (1993) 6 Cal.4th 287, 300 [24 Cal.Rptr.2d 467, 861 P.2d 1153], stated: "To prevail [on the issue of the duty to defend], the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*. In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*. Facts merely tending to show that the claim is not covered, or may not be covered, but are insufficient to eliminate the possibility that resultant damages (or the nature of the action) will fall within the scope of coverage, therefore add no weight to the scales. Any seeming disparity in the respective burdens merely reflects the substantive law." The *Montrose* court reiterated the statement in *Gray* that " 'the insurer need not defend if the third party complaint *can by no conceivable theory raise a single issue which could bring it within the policy coverage.*' " (*Id.* at p. 300, quoting *Gray* v. *Zurich Insurance Co.* (1996) 65 Cal.2d 263, 276, fn. 15 [54 Cal.Rptr. 104, 419 P.2d 168], italics added by the *Montrose* court.)[9]

Nevertheless, the obligation to defend is not without limits. "Rather, such a duty is limited by 'the nature and kind *of risk covered by the policy.*' " (*La Jolla Beach & Tennis Club, Inc.* v. *Industrial Indemnity Co.* (1994) 9 Cal.4th 27, 39 [36 Cal.Rptr.2d 100, 884 P.2d 1048], quoting from *Gray* v. *Zurich Insurance Co., supra*, 65 Cal.2d at p. 275, italics in original.) " '[T]he duty to defend derives from the insurer's coverage obligations assumed under the

---

[9]The insureds cite a host of recent cases reiterating the difficult burden an insurer must overcome in establishing the absence of a defense duty. (See, e.g., *Borg* v. *Transamerica Ins. Co.* (1996) 47 Cal.App.4th 448 [54 Cal.Rptr.2d 811]; *Lebas Fashion Imports of USA, Inc.* v. *ITT Hartford Ins. Group* (1996) 50 Cal.App.4th 548 [59 Cal.Rptr.2d 36]; *Vann* v. *Travelers Companies* (1995) 39 Cal.App.4th 1610 [46 Cal.Rptr.2d 617]; *Reese* v. *Travelers Ins. Co.* (9th Cir. 1997) 129 F.3d 1056.) These cases simply reiterate the above principles (and the corollary that any doubt as to the existence of the duty to defend must be resolved in favor of the insured) in coverage contexts dissimilar to that in the present case.

insurance contract.' [Citation.] Thus, 'where there is *no potential* for coverage, there is no duty to defend.' " (*La Jolla Beach & Tennis Club, Inc.* v. *Industrial Indemnity Co., supra,* 9 Cal.4th 27, 40, italics in original.)

■ In *Michaelian* v. *State Comp. Ins. Fund, supra,* 50 Cal.App.4th 1093, the court further explained the proper focus in reviewing the sustaining of a demurrer to a similar action for declaratory relief, breach of insurance contract, and "bad faith" post-*Montrose*: "A complaint is to be 'liberally construed' in favor of potential coverage. [Citation.] Since pleadings are easily amended, the proper focus is on the facts alleged, rather than the theories for recovery. [Citation.] However, the insured ' "may not speculate about unpled third party claims to manufacture coverage." ' [Citation.]" (*Michaelian, supra,* 50 Cal.App.4th at p.1106.)

### B. *Pertinent Terms of the Policy at Issue*

The insureds' complaint attaches the policy as an exhibit. The liability coverage of the policy, as pertinent here, states: "We shall pay all sums for which you may become legally obligated to pay as **damages**[10] caused by: 1. **Bodily Injury, Personal Injury[;] 2. Advertising Injury** . . . [;] 3. **Property damage** [¶] We shall defend any suit against you claiming these **damages**, even if the allegations of the suit are groundless or false."

"**Damages**" is defined as "the cost of compensating those who suffer **bodily injury, personal injury, advertising injury or property damage**[11] from an **occurrence**."

"**Bodily Injury**" is defined as "physical injury to, sickness or disease sustained by the body of any person, . . ." For purposes of "bodily injury," "**occurrence**" is defined as "an accident, including continuous or repeated exposure to conditions which result in **bodily injury** or **property damage** you neither expected nor intended. . . ."

### C. *The Factual Allegations of the Underlying Complaint*

The underlying complaint[12] contains four causes of action, for "assault and battery," "intentional infliction of emotional distress," "negligence," and

[10]Bold terms are as they appear in the original and signify that the terms are defined elsewhere in the policy.

[11]There is no claim to "advertising injury" or "property damage" coverage in this case. The claim to coverage for "personal injury" is discussed in the unpublished portion of this decision.

[12]Although much of the insureds' argument focuses on the potential that the underlying complaint can be amended, for context it should be noted there is no indication in the record

"negligent infliction of emotional distress." Notwithstanding the assertion of both intentional and negligence-based theories of liability, the facts alleged to give rise to that liability are virtually the same for all four causes of action.

As the factual basis for her claim of assault and battery, the claimant alleges that "On or about April 7, 1988, . . . Defendant with force and against the consent of Plaintiff, assaulted Plaintiff and raped, ravished, and carnally knew her." As the factual basis for her claim of intentional infliction of emotional distress, claimant alleges that "On or about April 7, 1988, Defendant JAMES QUAN forcibly and without Plaintiff's consent kissed and had sexual intercourse with Plaintiff. [¶] Defendant, JAMES QUAN's conduct was intentional and malicious, and done with the purpose of causing Plaintiff to suffer humiliation, mental anguish, and emotional and physical distress."

The claimant's cause of action for negligence expressly incorporates her prior allegation that the insured "with force and against the consent of Plaintiff, assaulted Plaintiff and raped, ravished, and carnally knew her," and her prior description of those acts as "wrongful and malicious." The claimant then adds that "On or about April 7, 1988, Plaintiff was seventeen years old and was in the presence of the Defendant upon his request of having her help him with his tax return and vacuuming of a house he owns . . . . [¶] At said time and place, Defendant negligently embrassed [sic],[13] kissed and had sexual intercourse with Plaintiff without her consent so as to cause her to lose her virginity, suffer physical pain and emotional distress . . . ." The claimant's cause of action for "negligent infliction of emotional distress" specifically incorporates the same factual allegations, adding that "Said defendant knew, or should have known, that his failure to exercise due care in his actions with Plaintiff would cause Plaintiff severe emotional distress.[¶] Said defendant, by kissing her and forcibly having sexual intercourse with her without her consent breached his duty of care owed to Plaintiff."

### D. Facts the Insurer Knew in Addition to the Allegations of the Underlying Complaint

The insureds allege, and for purposes of demurrer the court assumes, that the insurer knew the following additional facts at the time it withdrew from the defense. The insurer knew that Quan is "innocent," and that he pled not guilty to the original criminal charges, which were later dismissed. Although

---

that the allegations of the underlying complaint have ever changed in the over nine years the action has been pending, despite an arbitration, two mistrials, trial, judgment and an appeal.

[13]The parties expressly agree this term should read as "embraced."

that dismissal was reversed in yet another appeal, the insurer knew that the insured then accepted a plea bargain solely to buy his peace of mind. Pursuant to the terms of the plea bargain, the insured pled no contest to a "wobbler" offense of "sexual battery" under Penal Code section 243.4, which may be sentenced as either a misdemeanor or a felony. The offense was reduced to a misdemeanor, and after he fulfilled the terms of his probation, the insured's conviction was set aside, a plea of not guilty was entered, and the complaint was dismissed. The insurer also "knew" that the "no contest" plea could not be used to establish liability in the civil action.

Four days after receiving notice of the claim, the insurer conducted a recorded interview of James Quan, a transcript of which is attached to the complaint. The insured told the interviewer that he and his wife owned the apartment building where the incident allegedly took place, but the insured denied paying, hiring, touching or assaulting the claimant. At most, the insured thought the claimant may have "bumped" into him with her chest when they were walking. The insured's defense counsel in the underlying civil action gave the insurer deposition summaries that tended to indicate the innocence of the insured.

The insurer also received correspondence from the insured's defense counsel that raised an issue as to potential liability based on a distinction between rape and "unpermitted touching." The claimant's counsel had sent a letter to the insured's defense counsel articulating various "negligence" theories, among which was that the insured may have "misunderstood" communication from the claimant and mistook it for consent. The claimant's counsel sent another letter purportedly asserting "negligence" theories against both James and Lucita Quan. The insureds now assert that claimant's theory against Lucita Quan was that she was potentially negligent ·for allowing her husband James to handle maintenance of their co-owned properties. The insurer allegedly knew that the claimant was "looking to" the community property interest of Lucita Quan and seeking to impose liability on her "for respondeat superior," and for the negligent hiring and management of her husband.

Various memoranda in the insurer's claim file, some of which are attached to the complaint, reflect lower-echelon insurer employee opinions that there may be or was an obligation to defend due to the allegations of "negligence." An internal insurance company memo near the time of the insurer's withdrawal from the defense noted the claimant's "interesting theory of negligence," and shows that the claim was "reserved" (i.e. that loss reserves were established) for $250,000.

### E.  *Facts Known to the Insurer After Withdrawal From Defense*

After the insurer's withdrawal from the defense, the insured retained new counsel who continued to communicate with the insurer and demanded defense and indemnity. The insurer then learned that the claimant's counsel was of the opinion that Mrs. Quan might "lose her property interest." The claimant's counsel further surmised that Mr. Quan might be found to be an employee or agent of Mrs. Quan or of their enterprise.

The SAC is vague on the details, but a judicial arbitration was apparently subsequently held. The insured's counsel communicated the results of the arbitration to the insurer, arguing it was "a judicial determination of liability based on a covered activity." The arbitrator's "Amended Findings and Award" stated that the insured's acts "up and until the time of the occurrence of the sexual acts are found to have been negligent. Specifically, those acts include the furnishing of alcoholic beverages to a minor, and any unintended but negligent touching of the plaintiff, including kissing, fondling, and undressing of the plaintiff, are found to have been negligent, as it appears that such conduct was consented to. . . . [¶] It is further found that any unconsented sexual acts, specifically sexual intercourse, which occurred after plaintiff demonstrated to defendant her unwillingness to proceed were oppressive and malicious. . . ." Despite the insurer's employee's memo recommending that the insurer resume the defense in light of these "findings," the insurer continued to hold to its denial of any defense obligation, although it still "reserved" the claim at $250,000.

### F.  *Neither the Underlying Complaint Nor Facts Known to the Insurer Reveal the Insureds Face Any Potentially Covered Liability for "Bodily Injury" Caused by an "Occurrence"*

■  It is common to hear the argument that if the underlying complaint alleges negligence, there must be a duty to defend. This is not necessarily true. The duty to defend depends upon the coverage provided by the policy—the "nature and kind of risk covered"—which in turn depends upon the wording of the coverage clauses. The "bodily injury" coverage of the policy involved here applies only to "damages," defined as the cost of compensating those who suffer "bodily injury" from an "occurrence." "Occurrence," in turn, is defined to require an "accident." Thus, the insureds' emphasis on *Gray v. Zurich Insurance Co., supra,* 65 Cal.2d 263, is misplaced—here, unlike in *Gray,* the threshold question is not whether an unclear exclusionary provision applies, "but rather the scope of coverage itself: whether the conduct in question constitutes an accident within the meaning of the policy provision." (*Merced Mutual Ins. Co.* v. *Mendez* (1989)

213 Cal.App.3d 41, 47 [261 Cal.Rptr. 273].) The distinction was discussed in *Royal Globe Ins. Co.* v. *Whitaker* (1986) 181 Cal.App.3d 532 [226 Cal.Rptr. 435]: "[H]ere [unlike in Gray], the insurer only promises to indemnify or defend actions involving bodily injury caused by *an accident* resulting in bodily injury neither expected nor intended by the insured. . . . An intentional act is not an 'accident' within the plain meaning of the word. [Citations.] The same roadblock at the definition of 'accident' halts any argument claiming the [insured] intended his act but not the resulting harm." (*Whitaker, supra,* 181 Cal.App.3d at p. 537, fn. omitted.)

To avoid the consequences of the conclusion that no "accident" has been alleged, the insured argues he might be found merely "negligent," or may be found to have mistakenly believed the claimant had "consented." Attempting to draw a distinction between the intentional tort causes of action and the "negligence-based" causes of action, the insured argues that there will be covered liability if he is found to have been "negligent" in serving alcohol to, touching, kissing, embracing, fondling or having sex with the claimant. Such arguments misconstrue the "accident" requirement in standard general liability policies. "Under California law, the term refers to *the nature of the insured's conduct, not his state of mind.*" (*Collin* v. *American Empire Ins. Co., supra,* 21 Cal.App.4th 787, 804, italics added.) "Negligent" or not, in this case the insured's conduct alleged to have given rise to claimant's injuries is necessarily nonaccidental, not because any "harm" was intended, but simply because the conduct could not be engaged in by "accident."

In *American Internat. Bank* v. *Fidelity & Deposit Co.* (1996) 49 Cal.App.4th 1558, 1572-1573 [57 Cal.Rptr.2d 567], the court noted the "misapprehension that all claims for negligence must at least potentially come within the policy and therefore give rise to a duty to defend. That is not so. . . . 'Negligent' and 'accidental' are not synonymous . . . ." Although the facts of *American International* are distinguishable (inasmuch as the underlying action involved a claim of negligent misrepresentation, which by definition requires establishing an intent to induce reliance) the principle that "negligence" does not necessarily equate with an "accident" is equally applicable here.

Arguments similar to those put forth by the insureds in this case were rejected in another action stemming from allegedly nonconsensual sex, *Merced Mutual Ins. Co.* v. *Mendez, supra,* 213 Cal.App.3d 41. In *Mendez,* the court found an insurer had no duty to defend or indemnify its insured for damages caused by engaging in acts of oral copulation and attempted oral copulation, allegedly against the claimant's will. The insured admitted the acts of oral copulation, but contended the encounters were consensual. The

policy at issue defined "occurrence" as " 'an accident, including exposure to conditions, which results . . . in [¶] . . . bodily injury . . . .' " (*Id.* at p. 44.) The *Mendez* court framed the issue: "The parties appear to agree that in order for coverage and a duty to defend to exist, the acts of oral copulation and attempted oral copulation must be deemed an 'accident' within the meaning of the policy. They also agree Mendez intentionally engaged in the acts in question. The dispute centers on the meaning of the term 'accident.' Respondent contends the acts do not constitute an accident because they were intentionally performed by Mendez. Conversely, appellants contend an accident occurs even if the acts causing the alleged damage were intentional as long as the resulting damage was not intended. The argument urged by appellants has been repeatedly rejected by the appellate courts." (*Id.* at p. 48.)

The *Mendez* court continued: "In *St. Paul Fire & Marine Ins. Co.* v. *Superior Court* (1984) 161 Cal.App.3d 1199 . . . , the underlying suit against the insured involved an action for wrongful discharge. The court was called on to construe policy language similar to that in the present case: there the policy covered the insured against claims for ' ". . . bodily injury or damage to tangible property resulting from an accidental event." ' (*Id.* at p. 1201.) The court noted: 'In its plain and ordinary sense, "accidental" means "arising from extrinsic causes [;1] occurring unexpectedly or by chance [; or] happening without intent or through carelessness." (Webster's Ninth New Collegiate Dict. (1983) p. 49.) . . . The court concluded the employee's termination did not constitute an 'unintentional, unexpected, chance occurrence' (*ibid.*) and thus there was no potential liability under the policy. Accordingly, the court held the insurer had no duty to defend. (*Id.* at pp. 1202-1203.)

"In *Commercial Union Ins. Co.* v. *Superior Court* (1987) 196 Cal.App.3d 1205 . . . , the policy provided coverage and a defense for damages as a result of bodily injury or property damaged [*sic*] ' "caused by an *occurrence*." ' (*Id.* at p. 1206, . . .) 'Occurrence' was then defined by the policy as ' "an accident, including, continuous or repeated exposure to conditions, which results in *bodily injury* or *property damage*. This injury or damage must be neither expected nor intended by *you*. . . ." ' (*Id.* at p. 1207, . . .) As in *St. Paul*, the underlying action against the insured involved a claim of wrongful discharge. Relying on *St. Paul*, the court concluded the trial court erred in applying the 'term "accident" to the consequences of the act rather than to the happening of the act itself.' (*Id.* at p. 1208.) The court held: 'An intentional termination is not an "occurrence" under the policy because it is not an accident. The definition of "accident" halts any argument that real party intended his act but not the resulting harm.' (*Id.* at p. 1209.)" (*Merced Mutual Ins. Co.* v. *Mendez*, *supra*, 213 Cal.App.3d at pp. 48-49, fn. omitted.)

After summarizing the authorities, the *Mendez* court stated: "We reject appellants' argument that in construing the term 'accident,' chance or foreseeability should be applied to the resulting injury rather than to the acts causing the injury. In terms of fortuity and/or foreseeability, both 'the *means as well as the result* must be unforeseen, involuntary, unexpected and unusual.' [Citation.] We agree coverage is not always precluded merely because the insured acted intentionally and the victim was injured. *An accident, however, is never present when the insured performs a deliberate act unless some additional, unexpected, independent, and unforeseen happening occurs that produces the damage.* [Citation.]" (*Merced Mutual Ins. Co.* v. *Mendez, supra,* 213 Cal.App.3d at p. 50, second italics added.)

Applying these principles to the case before it, the *Mendez* court noted: "In the present case, Mendez admits intentionally engaging in sexual activity with Ms. Peery. This sexual activity, which Ms. Peery alleges occurred against her will, forms the basis of her action against Mendez. All of the acts, the manner in which they were done, and the objective accomplished occurred exactly as appellant intended. No additional, unexpected, independent or unforeseen act occurred." (*Merced Mutual Ins. Co.* v. *Mendez, supra,* 213 Cal.App.3d at p. 50.)

Rejecting the insured's argument that an insured could reasonably expect that "negligent bodily injury" would be covered, the *Mendez* court noted: "Appellants' argument also fails because the construction offered results in a strained interpretation of the word 'accident.' . . . The argument, in effect, is that Mendez's purported honest but unreasonable belief in consent would constitute negligence. According to appellants, this mistaken belief 'alter[s] the very character of the act itself' and renders it accidental. . . . [¶] We decline to construe the term 'accident' to include conduct constituting the crime of forcible oral copulation and/or assault with intent to commit forcible oral copulation. We further are unable to posit any factual construction where such conduct might be interpreted as accidentally occurring." (*Merced Mutual Ins. Co.* v. *Mendez, supra,* 213 Cal.App.3d at pp. 51-52.)

In the instant case, the insureds claim that the causes of action for negligence and negligent infliction of emotional distress in the underlying complaint "obviously" give rise to a duty to defend, arguing: "the most obvious theory giving rise to the potential for an award of indemnifiable damages in favor of [claimant] flows from her third cause of action for negligence which alleges that [insured] 'negligently embraced and kissed' [claimant,] causing her bodily harm." This contention fails the test stated in *Mendez.* The insured may have "negligently" embraced and kissed claimant in the sense that he violated some duty of care in doing so, but there is no allegation that his allegedly negligent but nevertheless intentional conduct

led to some "additional, unexpected, independent, and unforeseen happening" constituting an accident. (Cf. *Merced Mutual Ins. Co. v. Mendez, supra,* 213 Cal.App.3d at p. 50.)

Thus, the insureds' "negligence" versus "intentional tort" distinction misses the point.[14] In this context (as opposed, perhaps, to the "wilful acts" exclusion of Insurance Code section 533, discussed in the unpublished portion of this opinion), whether the insured intended the harm that resulted from his conduct is not determinative. The question is whether an accident gave rise to claimant's injuries. No accident is alleged, nor do the extrinsic facts suggest one. The acts asserted to give rise to the underlying claimant's injuries were deliberate, regardless of whether any harm was intended or expected to come of them. No "additional, unexpected, independent and unforeseen happening" produced the alleged injuries.

The insured points out that in the interview with the insurer, he stated that the claimant might have "bump[ed] into me with her chest." In their reply the insureds explain that this bumping may be a fact indicating that the claimant was flirting, or that the insured could reasonably have thought so, giving rise to a "defense" of consent. Yet even if a jury was to find that the insured was mistaken in his belief as to whether the claimant "consented" to the touching, embracing, kissing or sexual intercourse, there was still no additional happening constituting an "accident" which caused the injuries. The other party's consent, or the lack thereof, cannot change the nature of the insured's deliberate acts. Assuming, as the insureds insist, that liability could be imposed without a finding of any intent to "harm," the lack of such intent would not convert volitional physical acts into "accidents" within the meaning of that term in the policy under California law. In other words, injurious physical contact may have been a "mistake," but it was no "accident."

The insured claims the fact that he has denied committing any offense at all, and might be vindicated, necessarily gives rise to a defense obligation. This does not follow, and *Mendez* cannot be distinguished on that basis. Such a claim misconstrues the "groundless or false" clause common to liability policies. The point of the clause is that an insurer may not rid itself of the burden of defending an action that seeks damages potentially falling within the scope of the policy's coverage merely by arguing that the suit has no merit. The "groundless or false" clause does not change the fundamental principle that there is no defense obligation absent potential liability *under*

---

[14]In their brief, the insureds posit a number of asserted factual scenarios the jury might determine took place. The insureds argue that each of these "possibilities," with the exception of a finding of forcible rape, would give rise to covered liability. None of the purported possibilities, however, involve a finding that the claimant suffered physical injury caused by an "accident."

*the policy.* "The 'groundless, false, or fraudulent' clause . . . does not extend the obligation to defend without limits; it includes only defense to those actions of the nature and kind covered by the policy." (*Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d at p. 274.)

Contrary to the insureds' arguments, in this case the availability of exculpatory information indicating that the insured's conduct may not have risen to the level of a crime does not suffice to distinguish *Mendez* or to demonstrate a potential for covered liability.[15] The insureds misapply *Horace Mann Ins. Co.* v. *Barbara B., supra,* 4 Cal.4th 1076, to argue that so long as there remain any "disputed factual issues," determinative of the insured's liability *to the plaintiff* in the underlying action, a liability insurer must continue to defend. Yet in *Horace Mann* the insured faced liability to the claimant that, depending on the ultimate facts developed in the underlying action, could have been covered by the policy. Here, by contrast, no matter what develops as to liability or whether liability is imposed at all, the insured will not be obligated to pay damages for, and the insurer thus will not be obligated to indemnify the insured for, physical injury to the claimant caused by an "accident."

An intentional act is not an accident (*Dyer* v. *Northbrook Property & Casualty Ins. Co.* (1989) 210 Cal.App.3d 1540, 1547 [259 Cal.Rptr. 298]) even if it causes unintended harm (*Loyola Marymount University* v. *Hartford Accident & Indemnity Co.* (1990) 219 Cal.App.3d 1217, 1225 [271 Cal.Rptr. 528]). An accident can flow from an intentional act only if "some additional, unexpected, independent, and unforeseen happening occurs that produces the damage." (*Merced Mutual Ins. Co.* v. *Mendez, supra,* 213 Cal.App.3d at p. 50.)[16] In this case, there is no theory available on the facts expressed in the complaint or made known to the insurer from other sources under which the insured can be liable for physical injuries caused by "accidentally" touching,

---

[15]The insureds insist that the court must consider the "other facts" known to the insurer at the time it withdrew from the defense. These include that the insured "had received a misdemeanor sentence and that his no contest plea and conviction were inadmissible against him in the [underlying] action"; that eventually he was deemed to have entered a "not guilty" plea and the case was dismissed; that the emergency room physician had testified to the lack of physical evidence of rape (or indeed sex) or force; that appointed defense counsel had pointed out a possible legal difference between an "unpermitted touching" and rape; that the sheriff's office criminologist had not found evidence of semen or blood; and that the claimant's story "is shot through with contradictions."

[16]For example, a worker mops the floor at a fast-food restaurant, wetting it and reducing the coefficient of friction between that floor and a potential shoe sole. The act of mopping the floor is intentional; it is not an accident. A customer then enters, slips and falls. This second event *may* be an "additional, unexpected, independent and unforeseen happening" producing an injury, and hence may be an "accident" giving rise to a duty to defend. However, the intentional act of mopping the floor alone, just as the intentional act of sexual intercourse alone, is not an accident and does not trigger the defense duty.

kissing, embracing or having sex with the claimant, nor is there any additional "happening" to combine with these necessarily deliberate acts so as to produce an "accident" giving rise to bodily injury. There is thus no potential liability for "bodily injury" caused by an "occurrence" and no duty to defend.

### G. *Neither the Arbitrator's Vacated Findings Nor the Internal Opinions of Insurer Personnel Gave Rise to Any Duty to Defend*

▮ The insureds argue that the vacated "Amended Findings and Award of Arbitrator" "converted" potentially covered liability "into reality." Whatever the unexplained origins of this document prepared on the insured's counsel's letterhead, it is a legal nullity. (Cal. Rules of Court, rule 1616(c).) "A timely request for a trial de novo operates to vacate an arbitration award in its entirety, putting the case at large as though no arbitration proceedings had occurred. [Citations.]" (*Calderon* v. *Kane* (1995) 36 Cal.App.4th 1663, 1666 [43 Cal.Rptr.2d 480].)[17]

The arbitrator "found" that "furnishing of alcoholic beverages to a minor, and any unintended but negligent touching of the plaintiff, including kissing, fondling, and undressing of the plaintiff" were "negligent" acts, which resulted in damages of $900,000, while "any unconsented sexual acts, specifically sexual intercourse, . . . were oppressive and malicious" but resulted in damages only of $250,000. Such "findings" do not affect the determination that the complaint presented no potential for covered liability for "bodily injury" caused by an "accident."

The legal labels the arbitrator chose to place on the insured's conduct in trying to divide it between "negligent" and "intentional" acts were the arbitrator's legal opinions, and would not be binding on this court even had the award not been rendered a nullity. Moreover, the arbitrator's findings, if anything, tend to confirm the complete absence of any "accident" as that term is used in the policy at issue and interpreted under California law. The arbitrator's legal opinions, conveyed to the insurer, did not constitute "facts" sufficient to give rise to a potential for covered liability and a duty to defend. Again, even if there could be "negligent" kissing, fondling and undressing of the claimant, the acts upon which such "liability" was based were not "accidents."

For similar reasons, the insureds' argument that insurance company employee opinions or memos gave rise to a duty to defend in this case must fail.

---

[17]Indeed, the *insureds'* counsel argued below, when the insurer attempted to use the findings in connection with an earlier demurrer: "I think it's a breach of the ethical responsibilities of defendant's counsel to put forward to this court that the arbitration award in this case in the underlying action, which was de novoed, which has no legal effect, has any implication for the facts of this case."

Interpretation of an insurance policy is a question of law, as is whether there is a duty to defend in this context. Even experts may not opine on pure questions of law. (*Devin* v. *United Services Auto. Assn.* (1992) 6 Cal.App.4th 1149, 1157, fn. 5 [8 Cal.Rptr.2d 263].) Without more, writings or memos by insurance company personnel venturing their opinions as to whether a defense should be afforded do not constitute "admissions" of a defense duty. The argument was rebuffed in *Chatton* v. *National Union Fire Ins. Co.* (1992) 10 Cal.App.4th 846 [13 Cal.Rptr.2d 318], where the court stated: "Respondents' final argument that there was coverage for advertising injury under the terms of the CGL policy because National Union's employees themselves admitted the existence of such liability requires but a brief reply. It is well settled that the interpretation of an insurance policy is a *legal* rather than a *factual* determination. [Citations.] Consistent therewith, it has been held that opinion evidence is completely irrelevant to interpret an insurance contract. [Citations.]" (*Chatton, supra*, 10 Cal.App.4th at p. 865.)

The insureds in this case improperly seek to substitute insurance company employee musings concerning the defense duty decision for actual facts that might demonstrate the potential for covered liability. The fact that insurance company employees may have questioned, in writing, whether denial of a defense obligation was proper based on the facts cannot demonstrate that those facts gave rise to potentially covered liability. As a matter of law they did not.[18]

H.-K.*

·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·

## IV. DISPOSITION

The judgment is affirmed. Each party to bear its own costs.

Boren, P. J., and Nott, J., concurred.

A petition for a rehearing was denied November 20, 1998, and appellants' petition for review by the Supreme Court was denied February 17, 1999.

---

[18]Insureds do not squarely argue that insurer has "waived" or is "estopped" from asserting coverage defenses. Moreover, "the doctrines of implied waiver and of estoppel, based upon the conduct or action of the insurer, are not available to bring within the coverage of a policy risks not covered by its terms . . . ." (*Aetna Casualty & Surety Co.* v. *Richmond* (1977) 76 Cal.App.3d 645, 653 [143 Cal.Rptr. 75].) "[C]overage under an insurance policy cannot be established by estoppel or waiver." (*Manneck* v. *Lawyers Title Ins. Corp.* (1994) 28 Cal.App.4th 1294, 1303 [33 Cal.Rptr.2d 771].)

*See footnote, *ante*, page 583.