Filed 8/19/14  Mike Rovner Construction v. Liberty Surplus Ins. Ca2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| MIKE ROVNER CONSTRUCTION, INC.,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>LIBERTY SURPLUS INSURANCE CORPORATION,<br><br>    Defendant and Respondent. | 2d Civil No. B246877<br>(Super. Ct. No. 56-2012-00411331-CU-BC-SIM)<br>(Ventura County)<br><br>ORDER MODIFYING OPINION<br>[NO CHANGE IN JUDGMENT] |

THE COURT on its own motion orders that the opinion filed herein on July 31, 2014, be modified as follows:

1. On page 9, first sentence of the second full paragraph, the word "Rovner" is replaced with "Liberty" so the sentence reads:

Liberty is correct that insurance coverage cannot be established through waivers implied from the conduct of an insurer or by estoppel.

2. On the last page of the opinion counsel's name "Jeniffer C. Kalvestran" is deleted and replaced with "Jennifer C. Kalvestran" to reflect the correct spelling of her first name.

There is no change in the judgment.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| MIKE ROVNER CONSTRUCTION, INC., <br><br>     Plaintiff and Appellant, <br><br> v. <br><br> LIBERTY SURPLUS INSURANCE CORPORATION, <br><br>     Defendant and Respondent. | 2d Civil No. B246877 <br> (Super. Ct. No. 56-2012-00411331-CU-BC-SIM) <br> (Ventura County) |

Mike Rovner Construction, Inc., (Rovner) appeals from a summary judgment entered in favor of Liberty Surplus Insurance Company (Liberty).  The trial court found (1) that Liberty had no obligation to indemnify or defend because a complaint had not been filed against Rovner by the owner of an apartment complex where Rovner's subcontractors had improperly installed defective shower stalls; (2) the property damage produced by this occurrence began prior to the policy period in question and was specifically excluded; and (3) there is no stand alone

cause of action for an alleged violation of the Fair Claims Settlement Practices Regulations.[1]

Appellant contends there are triable issues of fact as to all three issues. We affirm.

*FACTUAL AND PROCEDURAL HISTORY*

*The Insuring Agreement*

Liberty issued a policy of comprehensive general liability insurance that promises to pay sums Rovner "becomes legally obligated to pay as damages because of . . . property damage to which this insurance applies." "Property damage" was defined as "physical injury to tangible property" and "loss of use of tangible property that is not physically injured." Property damage was covered only if it occurred "during the policy period" from November 13, 2009 to November 13, 2010. An "occurrence" was defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

Liberty agreed "to defend [Rovner] against any 'suit' seeking those damages." A "suit" was defined as a civil proceeding alleging damages or an arbitration proceeding or other alternative dispute resolution proceeding in which damages are claimed.

Liberty explicitly excluded "Known Injury or Loss;" viz., property damage that "began prior to the inception date of this policy, and [that] is alleged to continue into the policy period." The known injury or loss exclusion was said to apply whether or not the damage or its cause was known to Rovner, whether or not continuous exposure to conditions causing the property damage occurred during the policy period or caused additional or progressive damage and whether or not Rovner's legal obligation to pay damages was established as of the inception date of the policy.

---

[1] All references to the Fair Claims Settlement Practices Regulations are set forth in the California Code of Regulations, title 10, section 2695 et seq.)

Liberty's insurance contract also provides that Rovner was not permitted in its interactions with the owner of the apartment project to "make a payment, assume any obligation, or incur any expense . . . without [Liberty's] consent," except at its own expense.

*The Loss*

Rovner was employed by LA Lakes at South Coast, L.P. to provide the labor and materials necessary to renovate the interior of apartments in Costa Mesa. Rovner in turn employed two subcontractors to provide and install shower enclosures in the individual apartments. The shower enclosures were installed between October 2007 and March 2009. The shower units were defective and were improperly installed. They failed and began damaging the apartment units when they were first used before the inception date of the Liberty policy.

Complaints about the shower enclosures began in 2008 and continued through October 2009. Between April 2010 and April 2011, the owner of the apartment buildings spent $26,965 repairing 21 of the units. Rovner repaired the rest between August 2011 and December 2011 at a cost of $553,800. Insurers other than Liberty paid Rovner $367,533.34 to resolve its claims against them.

*Trial Court Proceedings*

The owner of the apartments never filed a lawsuit, never commenced an arbitration proceeding and never initiated an alternative dispute resolution process to establish Rovner's legal obligation to pay for property damage that resulted from the improper installation of the defective shower enclosures.

Rovner sued its insurers on July 27, 2011, even before it began making repairs to the units. The First Amended Complaint alleges Liberty breached the implied covenant of good faith and fair dealing in its contract (First Cause of Action) and breached the terms of its insurance contract (Second Cause of Action). Rovner sought declaratory relief to confirm coverage for the unpaid balance of the repairs voluntarily made by Rovner (Fourth Cause of Action). There are also common counts (Third Cause of Action).

3

Liberty responded to the original complaint and Rovner's demand for a defense and indemnity by sending its insured a letter pointing out the fact no complaint had been filed and noting various limitations on coverage. Liberty reserved its rights to assert all defenses to Rovner's claim for coverage and a defense. It appointed an attorney to represent Rovner as to the owner's claim it was entitled to reimbursement for the initial repairs. Liberty later agreed, as an accommodation to its insured, to settle the smaller claim by the owner of the apartments for the cost of the repairs it made. Three insurers equally divided the owner's $26,965 claim.

Rovner and Liberty filed motions for summary judgment. The trial court's eight-page ruling denies Rovner's motion, grants Liberty's motion and orders Rovner's complaint against Liberty dismissed in its entirety.

In explaining its reasons for granting the motion for summary judgment, the trial court observed that the insurance contract states Liberty "ha[s] no duty to defend or indemnify it unless a lawsuit was filed." The court concluded that since the owner of the property did not file "suit" or commence arbitration or alternative dispute resolution proceedings against Rovner, Liberty had no obligation either to indemnify or to defend the company. Citing *Foster-Gardner, Inc. v. National Union Fire Insurance Company* (1998) 18 Cal.4th 857, 883-884, the trial court rejected Rovner's argument that Liberty's failure promptly to respond to its notice of its claim impliedly denied it, giving Rovner the right to settle with the owner whether or not a suit was filed.

As an alternative ground for granting Liberty's motion, the trial court concluded the property damage asserted by Rovner was uninsured because the loss was a "Known Injury or Loss" that began prior to the inception date of the policy. The court found that undisputed facts establish that the defective shower enclosures were improperly installed and that upon first use damaged the apartments before the inception date of the Liberty policy on November 13, 2009. The court also said it was undisputed that this was the "occurrence" that produced leaks, failures and

4

collateral damage to the apartments began before the Liberty policy became effective. The court noted that it was irrelevant to the coverage dispute that some of tenants discovered and reported the leaks and other failures after the inception date of the Liberty policy because the policy specifically excludes such losses.

The trial court granted summary judgment on Rovner's First Cause of Action based upon its conclusion that the Fair Claims Settlement Practices Regulations do not create or even address insurance coverage. The regulations simply deal with how insurance claims are to be managed. The court concluded that while section 2695.7 of the regulations requires an insurer to respond to a claim within 40 days, non-compliance does not create a cause of action for money damages. The trial court rejected Rovner's argument that Liberty should be equitably stopped to deny coverage finding the elements of the doctrine were not established as a matter of law.

*STANDARD OF REVIEW*

"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute. [Citation.]" (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 843.) A motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A triable issue of material fact exists only if "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof. . . ." (*Aguilar v. Atlantic Richfield Co.*, *supra*, at p. 850.)

We apply a de novo standard of review to an order granting summary judgment when, on undisputed facts, the order is based on the interpretation or application of the terms of an insurance policy. (*TRB Investments, Inc. v. Fireman's Fund Ins. Co*. (2006) 40 Cal.4th 19, 30-31.)

5

While insurance contracts will be construed broadly in favor of the insured, where the terms of a policy are plain and explicit, the courts will not indulge in a forced construction so as to fasten a liability on the insurance company that it has not assumed. (*New York Life Ins. Co. v. Hollender* (1951) 38 Cal.2d 73, 81; see also *Continental Cas. Co. v. Phoenix Const. Co.* (1956) 46 Cal.2d 423, 432 ["insurance company has the right to limit the coverage of a policy issued by it and when it has done so, the plain language of the limitation must be respected"].)

*DISCUSSION*

*The Insuring Agreement*

Applying the above principles, we conclude that Liberty had no obligation under its policy to pay the amount voluntarily expended by Rovner to repair and replace the improperly installed defective shower enclosures. There was no suit, arbitration demand or ADR process commenced by the owner of the property against Rovner and thus there was no "property damage" that Rovner was legally obligated to pay. Moreover, the policy unequivocally excludes "Known Injury or Loss" that the policy states includes damage to property that "began prior to the inception date" of its policy.

*The Requirement of a "Suit"*

The Liberty policy is a standard comprehensive general liability policy. Liberty's indemnity provision states that it will pay sums Rovner "become[s] legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." As to the duty to defend, the insuring agreement provides that Liberty has the "right and duty to defend Rovner against any 'suit' seeking those damages" and to refuse to defend Rovner against "any 'suit' seeking damages for . . . 'property damage' to which this insurance does not apply."

In *Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, the Supreme Court addressed this commonly used policy language and concluded that the duty to indemnify the insured is limited to money ordered by a court. Citing *Foster-Gardner v. Superior Court*, *supra*, 18 Cal.4th at

6

pages 961-962, the majority reasoned that "[t]he duty to defend is broader than the duty to indemnify. The duty to defend is not broad enough to extend beyond a 'suit,' i.e., a civil action prosecuted in a court, but rather is limited thereto. A fortiori, the duty to indemnify is not broad enough to extend beyond 'damages,' i.e., money ordered by a court, but rather is limited thereto. 'It is . . . well settled that because the duty to defend is broader than the duty to indemnify,' a determination that 'there is no duty to defend automatically means that there is no duty to indemnify.' [Citations.]"

Thus the duty of Liberty to defend and to indemnify Rovner is expressly linked to damages sought in a "suit," a term the policy explicitly states is limited to a complaint filed in court or an arbitration proceeding or an ADR process approved by Liberty. In the absence of a process designed to produce a determination of the damages Rovner is legally obligated to pay, Liberty was not obligated either to defend or to indemnify Rovner. Liberty's insured was not entitled to bypass this process and engage Liberty's policy by simply agreeing with the owner to make repairs and passing the bill along to its insurer.

*The Known Injury or Loss Exclusion*

Even if Liberty were obligated to indemnify Rovner for the cost of repairing the substandard work of its subcontractors, the policy specifically excludes property damage that began before November 13, 2009 and continued into the policy period. The known injury or loss exclusion applies whether or not the damage or its cause was known to Rovner, whether or not continuous exposure to conditions causing the property damage occurred during the policy period or caused additional or progressive damage and whether or not Rovner's legal obligation to pay damages was or was not established as of the inception date of the policy. To be covered, the property damage must occur during the policy period.

It is undisputed that Rovner's subcontractor improperly installed defective shower enclosures long before the inception date of Liberty's policy. All the enclosures were the same. It is also undisputed that the defective installations

7

damaged the apartments beginning with their first use after installation and that this too occurred before the inception date of the Liberty policy. Predictably, over time the defects continued to cause additional and progressive damage throughout the apartment project that was reported at different times by tenants. The damage was such that Rovner determined it was obligated to make repairs to every one of the units to salvage a valuable business relationship with the owner. This is precisely the risk that Liberty sought to exclude and that Rovner accepted when the policy was issued. Progressive property damage that starts before the insurers' policy period but that continues into the policy period does not trigger coverage. (*USF Ins. Co. v. Clarendon Amer. Ins. Co*. (2006) 452 F. Supp.2d 972, 989-990.)

<em>Liability Based Upon a Claims Practices Regulation</em>

If coverage exists for property damage that occurred within the policy period, then denying an insured a defense and indemnity may give the insured the right to settle with a claimant and expose the insurer to liability for the amount of the settlement. (*Walters v. American Ins. Co.* (1960) 185 Cal.App.2d 776, 784; *Pruyn v. Agricultural Ins. Co.* (1995) 36 Cal.App.4th 500, 520, fn. 9.) Here, Liberty had no duty to defend Rovner and no obligation to indemnify the company from the cost of the settlement it entered into with the owner of the apartment project.

Liberty's failure to respond within 40 days to Rovner's notice it was making a claim for the cost of repairing the shower enclosures does not create coverage where none existed before and does not expose Liberty to a claim for damages in an amount equal to the cost of its repairs to the apartment units. Violating section 2695.7 does not create a cause of action for damages. (*City of Hollister v. Monterey Insurance Co.* (2008) 165 Cal.App.4th 455, 490-491.)

<em>Equitable Estoppel</em>

Rovner maintains that the doctrine of equitable estoppel applies to create coverage. It argues that there are triable issues of fact as to whether Liberty allowed and encouraged Rovner to settle with the owner of the apartment project

8

and to spend the money required to make the repairs. Rovner reasons that even if property damage first occurred before the inception of Liberty's policy period, equitable considerations should be applied to create coverage "to prevent Liberty from unfairly benefitting from its own wrongful conduct." Rovner explains, "Such wrongful conduct consists of allowing and encouraging [Rovner] to conduct repairs at [its] own cost, so as to prevent the filing of a lawsuit by [the owner of the project] which in turn relieved Liberty of its obligation to indemnify [Rovner] and compensate it for the cost to repair those units that fall within the coverage of [Liberty's policy]."

Liberty was not relieved of a duty to defend as to indemnity because it never arose.

Rovner is correct that insurance coverage cannot be established through waivers implied from the conduct of an insurer or by estoppel. (*Quan v. Truck Insurance Exchange* (1998) 67 Cal.App.4th 583, 602, fn. 18; *R & B Auto Center v. Farmers Group* (2006) 140 Cal.App.4th 327, 351-352.) The elements of the doctrine of equitable estoppel are: "(1) The party to be estopped has engaged in blameworthy or inequitable conduct; (2) that conduct caused or induced the other party to suffer some disadvantage; and (3) equitable considerations warrant the conclusion that the first party should not be permitted to exploit the disadvantage he has thus inflicted upon the second party." (*City of Hollister v. Monterey Ins. Co.*, *supra*, 165 Cal.App.4th at p. 488.) The principal disadvantage suffered by the insured in *City of Hollister* however, was the forced forfeiture of insurance *coverage.* Here, there was no coverage.

Nothing Liberty did caused Rovner to forfeit coverage with Liberty or any of its other insurers. Rovner either had coverage under Liberty's policy or the policy of one or more other insurers or it did not. Rovner's dispute with its insurers about coverage existed and was in litigation before the repairs were commenced. Nothing Liberty did forced or induced Rovner to settle its lawsuit against the

9

insurers that issued policies covering the period when the defective showers were installed and first used for less than the entire cost of the repairs.

*DISPOSITION*

The judgment is affirmed.  Costs on appeal are awarded to Respondent.

NOT TO BE PUBLISHED.

BURKE, J.[*]

We concur:

GILBERT, P. J.

YEGAN, J.

---

[*] (Judge of the Superior Court of San Luis Obispo County, assigned by the Chief Justice pursuant to art. 6, § 6 of the Cal. Const.)

10

Barbara A. Lane, Judge

Superior Court County of Ventura
_____

O'Rourke, Fong & Manoukian, Roderick D. Fong, Marina Manoukian and Christian A. Setian for Plaintiff and Appellant.

Musick, Peeler & Garrett, Susan J. Field and Jeniffer C. Kalvestran for Defendant and Respondent.